No. 23-7072. Ms. Baker. Thank you, Your Honor. And I believe we're actually in the afternoon if it pleased the Court. I do appreciate you listening. Time flies. It does when you're having fun. So, the bulk of the evidence presented in this trial focused around the events that happened on April 11th. The jury ultimately found Mr. Louie-Jackson not guilty of those charges, and in those charges were included charges of possession of drugs, guns, and ammunition. And the SUV that was involved with that April 11th event included indicia that Mr. Louie-Jackson was associated with that SUV, including his identification. However, the jury again decided that he was not culpable of those offenses. Do those acquittals limit the evidence that can be considered? I believe that it is reasonable to assume that if the jury didn't believe he was culpable of that offense, that some of the issues or some of the things that the government pointed to as being proof of his ownership of the ammunition on the 28th, it's unreasonable to think that the jury saw that as probative regarding the ammunition on the 28th. So, on the 28th, he was, the cops went to the home of two women. The police believed that he associated with them. This was at least the third place that they had gone to serve a search warrant, not a search warrant, an arrest warrant for Mr. Louie-Jackson from those events. When they arrived, they talked to one of the residents. She went back inside. She came out. Well, after she came back out to talk to the police officers, he was sighted out in the back of the house and he came around to the front of the house, met with the police, was arrested without incident. He didn't resist. You know, there was no dispute to that. And he was taken into custody. The women who lived in that house consented to a search. They particularly searched the room of a Miss Kendra Millot. Now, later in custody, Mr. Louie-Jackson was talking to, I believe it was Officer Good. And Officer Good begins this conversation, it's in the video that was provided and the audio, begins talking about the fact that he's reassuring Mr. Louie-Jackson that Kendra, Miss Millot, she's going, she's being sent to another place because she's got some other, she's got her own legal issues to sort out. But so far, she hasn't caught anything fresh. Mr. Louie-Jackson immediately responds to that by claiming ownership of marijuana in Miss Millot's car. There's no indication that was even on the premises at the time that he was taken into custody. But he's jumping in there and trying to take one for Miss Millot. He's concerned about her. They also have a conversation. And this is the only indication of a relationship between him and Miss Millot. The officers don't refer to the relationship between the two of them. They don't seem to be aware of that until they begin the search. And there's no other discussion about it in the rest of the record. When Mr., when Officer Good, after he Mirandizes Mr. Louie-Jackson, he proceeds to talk to him about some other things. But he also then says, and the ammo. Mr. Louie-Jackson's response does not convince, is not convincing that he knew ammo's ammunition was in the home. His question, he and Mr. Officer Good's response is consistent with that. He's like, yeah, this ammo, and what he calls it, this, I won't swear before the court, but this stuff, just various stuff. And Mr. Louie-Jackson, again, in the context of protecting Miss Millot, says, yeah, mine. And that's it. They don't return to that ammunition in that conversation. Well, it's not in the context of protecting Miss Millot. That's your theory. He didn't say, hey, I'm trying to protect my girlfriend here, so yeah, it's mine. We have to infer that. Let me ask you a couple of questions. So just see what's disputed and not disputed. Some of this may very well be. Does anyone dispute that she is his girlfriend? No. Okay. And that no one disputes that the house where the ammo was found was her house? No. Okay. And does anyone dispute that he stayed overnight at that house? I don't think there was evidence to that effect. Okay. Is there any dispute that the ammo was found in Miss Millot's room? No. Okay. And no dispute that there was men's clothing found in the house? I believe I would dispute that it was proven that was men's clothing, especially since. Let me ask, let me ask it. Any dispute that there was clothing consistent with being men's clothing found in the house? I would say based on the way young women dress today and not having seen how she dresses, I don't know that I would, you know, hazard a guess without more detail. Any dispute that there were men's toiletries found in the house? The officer did not make an affirmative assent. He said, well, maybe it was the gist of what his response when defense counsel cross examined. Any dispute that the defendant was leaving the house as the police were knocking on the front door after they had spoken to Miss Allen and she had gone back inside? He was spotted outside and he came around to the front where the police were. Okay. And he wasn't fully clothed when he came out? He was not wearing a shirt, correct? Okay. And and then ultimately they, whether whether we think he was protecting Miss Millot or not, he did confess that that was his ammo. He did say mine. Yes. Okay. So that turns us to the fact that we have a have a admission. So the admission I would I assert is not corroborated. Now, the government has conceded that his presence in that home, either as an overnight guest or simply there in the instant, is not enough to establish that he had constructive possession of that ammunition. And I believe if you look at the photographs and video. Well, let me ask you this. If he had constructive possession of the ammunition, we don't care about his confession, do we? If if if that was sufficient. Okay. So because it seems to me that this all sort of is all sort of symbiotic. It is. And it makes me wonder if the confession is not backed up by the things we just talked about that may or may not be disputed. And that the two of those things together, maybe that's enough. I think if they had produced sufficient evidence that he had been in constructive possession of that apart from the admission. Yeah. I mean, we wouldn't be here. Right. But doesn't but doesn't the admission say let's assume that those things we talked about get you close, but not over the line or gets the government close, but not over the line to proving possession, constructive possession. Doesn't the confession work with those things to push it over the line? Well, but isn't it evidence that he possessed it? It I think it would be evidence of perhaps knowledge and access. However, I think if you really look at the admission, he says mine. And as the Henderson case informs us, possession and ownership are very distinct things under the law. He admitted to ownership. He's in trouble with both of those things, isn't he? If he doesn't show the requisite intent to exercise control of it, which I think is part of the problem with them showing constructive possession in this case, is that this is ammunition. There were no firearms found in the home. The ammunition in the hygiene kit, which is probably the closest thing I think you could say was masculine without further. And again, I think there's questionable there. And the police, you know, again, the policeman acknowledges like, well, I think it was a man's. It looks like a man's kit. I have used a man's meth kit. But that's beside the point. But that stuff was they mentioned the fact that that was covered in stuff. It's not even in the state that you could put it into a gun to use. It is ammunition. But constructive possession needs proof of intent. Can I ask you a question? Of course. You make a really good point. The distinction between possession and ownership. Yes. But isn't ownership, by definition, knowledge of the contraband and an intent to exercise dominion over it? If I own a Volvo, then I constructively, by definition, I constructively possess it. Right? I have knowledge of it. You have the power to, but I don't know that it necessarily always shows intent. For example, if you own something and you entrust it to somebody else, knowing that they'll do whatever they want without any intent to control how they use that, I think you could argue that it is not dispositive. I am arguing that's not dispositive. I got you. OK. I've got a question about how to view constructive possession. So on whether there was constructive possession of the ammunition found on April 28, may we consider the evidence found in the Yukon on April 11? I think if he had been convicted, if the jury had found he was guilty of the April 11 offense, I think it would be reasonable to believe that the jury did see that as evidence that he had the intent or had— Well, apart from what happened on the April 11 charges, there was his tribal membership card, his gym membership card. Why doesn't that show that there were items found in the Yukon that did belong to him? I mean, those belonged to him, didn't they? The jury found that they did not. What? His own tribal membership card doesn't belong to him? That is what the jury found. Is that really the issue that the jury was asked to find? He was charged with possession of ammunition and firearms in the SUV on April 11. I understand that, but that isn't the same thing as finding that that wasn't his gym membership card. Oh, no, I'm sorry. I think there was no dispute of those rights. I mean, his card was there and his tribal membership card was there. So why isn't that relevant to constructive possession on April 28? Well, again, we're getting to the sufficiency of the evidence to convict him. Well, isn't that what this case ultimately is, is a sufficiency of the evidence challenge? It is. But I would argue that the jury did not consider that as relevant when they decided to convict him. They convicted him solely based on the admission. Well, how do we know that? The jury was in the jury room and only the jury was in the jury room. So how do we know that? How do we know that? Because they acquitted him of the offenses on April 11. But is the evidence that relates to April 11 irrelevant to the April 28? No, I don't believe it's irrelevant. But I also believe that the jury obviously did not feel that it was proof of ownership on or possession on the 28th. And I think that's clear by the acquittal. And I would like to reserve the remainder of my time, unless you have further questions. That's fine. Thank you. Thank you. Counsel, I excused you earlier, so thank you for coming back. We were going to issue a bench warrant. My flight's not until 5 anyway, so I had nowhere to go. But, well, may it please the Court, I'm Luke Rizzo. I'm an AUSA from the Eastern District of Oklahoma. The only issue here is whether sufficient evidence was presented to the jury for them to convict the defendant of being a felon in possession of ammunition. The only element of the crime that is in question on this appeal is possession, defendant's possession of said ammunition. So a challenge to the sufficiency of the evidence usually requires the Court to determine whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. All the evidence would be viewed in light most favorable to the government's case. There's not much leeway on review. In this case in particular, due to the failure to raise the issue at trial, it's really more of a plain error review. That's the government's position, which would mean there would have to be a particularly appalling mistake or an error so obvious that it would almost demand a reversal. At trial, the government had to prove the defendant knowingly possessed the ammunition, so clearly this was about constructive possession. The government proved that the defendant was in constructive possession of the ammunition by showing the jury how the ammunition was discovered during a search of the home, which belonged to the defendant's girlfriend. Rather, she lived in there. She shared the house with another woman. The room that was Kendra's, the girlfriend's, ammunition was found in there. Shortly after arriving, the defendant was seen running out of the house. He was apprehended right outside the house, shirtless. There was men's clothing in the room. There was also ammunition found in a men's hygiene kit. Can I ask you a question about him running out of the house? There seems to be some dispute factually whether he just might have been outside and walked around the house or whether the way you say it, it sounds more like an attempt to evade the police because he knew they were out front. Well, what's on the record, Your Honor, I believe it's a trial transcript. I think it's on page 55. One of the witnesses said, he hears a report on the radio. Mind you, the police are sort of surrounding the home. One of the witnesses says, he hears a report on the radio. He's running out the house. The guy's running out the house. So that's on the record. That's how the government presents that fact. And then, indeed, they find him right outside the house in a state of undress. Effectively, whether he's evading police or not, certainly, Your Honor, that probably would be something that's more of an inference. But I think the factual record supports that finding. Moreover, the jury, the jury's verdict itself. It should be noted, there's a lot of talk or a lot of argument about his admission, his confession to police. But I think the court effectively parsed that out. I mean, it is symbiotic to divide and conquer, which I think is the defendant's strategy here. You know, if we just isolate the confession, it's not corroborated by anything. And if we just isolate the arrest, he's not technically in possession of the ammunition. But naturally, the jury heard of both events. You know, they heard about the confession. They heard about what was found in the home. They deliberated on both, and they ended up finding the defendant guilty on count six. Now, when you, you know, I mean, there's also some, perhaps, ambiguities or some argument, you know, whether it's men's clothing or not. I mean, also, it's important to realize the jury likely inferred it was the defendant's clothing. How did they do that? Based on the fact that, you know, he told police he was in his girlfriend's house, and he's right outside. I'm sure the jury deliberated on that. But, and of course, most telling, I mean, this case is all about the defendant admitting that the ammunition belonged to him. Now, why does he have a bunch of ammunition around, clearly, to use it? And I think that is also, you know, the jury was instructed on what constructive possession is. You know, they were told it's, you know, about the intent to use it, having the knowledge and power to use it. And the jury found him guilty of that. Notably, constructive possession can be inferred. And that's what the jury likely did here. What if Kendra had been a male? Would the outcome be different on corroboration? Are you saying if the, so if he was at a… The ammunition in the male hygiene kit, I think the government has not relied exclusively on it, by any means. But that certainly, I think, could fairly be an indication that the ammunition was owned or possessed by the male occupant of that room, as opposed to the female occupant of the room. And if there were two males, it would be more likely that it would be really speculative on which of those two males had the hygiene kit. Well, I think that's an interesting hypothetical, Your Honor, because, you know, that just points to how valuable or how paramount the confession is. Well, but the whole point is we have, right? I mean, the confession is what it is. We have to have corroboration. So if… It's a law, right? Certainly, Your Honor. And if the defendant, if he's being interviewed by police and they're saying, hey, you, I was in my buddy's house, or we searched your buddy's house. We know you were in there a minute ago, and we found a bunch of ammunition in there. Whose was that? If he says, that's mine, not my buddy's, I think we're in the same place. I think he still gets convicted. The jury still convicts him. I mean, I think that's how important it is. I mean, when we talk about… You think it's weaker than… I think it's just as strong. I think it's, whether a male or female, I don't particularly, the government's position is it probably wouldn't matter that much. I mean, notably, the notion that the confession is uncorroborated, the government doesn't, just can't accept that. What is the evidence in the record that he stayed the night at that house? Well, there's no evidence on the record he stayed the night at the house, Your Honor. The evidence would suggest he was in that house when the police were knocking on the door, and he decided to leave the house. That's what's on the record. Whether or not he ever stayed at that location overnight, again, this is what the jury was doing, deliberating, probably assessing their relationship. What was the evidence as to why the police decided to look for him there? Well, that had to do with the five counts, the five counts of acquittal. So what happens after the police, that first incident earlier that month, they believe they know who was driving the vehicle, obviously, and they're on a hunt for him. They're basically searching, and they effectively get information of an arrest warrant for him at that house. And then they do end up finding him there, as we know. So when he's arrested, obviously, when they arrest him outside the house, they're not arresting him for the ammunition in the room. They're arresting him for the high-speed chase that he was suspected of, but was ultimately acquitted of. So, I mean, I think a lot of it has to do, or a lot of this appeal has to do with, you know, there's a significant amount of the evidence linking him to the ammunition was circumstantial. But as the court is well aware, that's not that vital of a distinction. An individual could be convicted based solely on circumstantial evidence. Additionally, the interview was corroborated. The government's position is the existence of the ammunition itself corroborates the confession enough. So what should we make of the acquittals on the April 11 charges? Does that factor in to anything in terms of our assessment of the sufficiency of the evidence? The government's position is that it doesn't factor in. I think the only way, well, the way the government likes to present it is it shows how well the jury deliberated. You know, these were two different actions or two different events that they were presented with, and they acquitted on the first five counts. That's all about the first event. They didn't believe the government proved that beyond a reasonable doubt. And then on the sixth count, which is what's detailed in the facts in this appeal, they found the defendant guilty. The government would suggest that it shows the jury was deliberating effectively and, you know, what to make of it. I mean, factually, they're just two different situations. They involved, I think most critically, two different law enforcement officers that testified at trial about each event, and the jury came up with their decision. And certainly the government doesn't question or challenge the jury's decision on those counts anyway. So in sum, the evidence in this case, it created a more reasonable inference of access, control, and intent. The defendant removed any doubt by plainly stating the ammunition belonged to him. Based on the applicable law and the evidence here, a reasonable jury could have found the defendant guilty beyond a reasonable doubt of constructively possessing the ammunition. And based on that, the government asks the court to affirm the conviction. And if the court has any further questions, I'll see you. Thank you, counsel. Thank you, Your Honor. Do we have some rebuttal time? I'll be brief, Your Honors. What I'd like to return to, and the government has conceded that nothing regarding April 11th was relevant to what happened on April 28th. Therefore, I think it's created this problem with intent to use this ammunition based solely on the information that the jury had apart from the admission. Then I'd return to the fact that corroboration, the concept of the need for corroboration of an admission, is actually to restrict the jury in convicting somebody based on an uncorroborated admission. It is true that the corroboration of ownership, which is all he admitted is ownership, which does encapsulate elements of constructive possession, but that wasn't corroborated by the evidence of his being in this house at some time, maybe even just that day when they came to arrest him. It also doesn't, without corroborating that facet of the actual admission, the government's evidence pointed to evidence to corroborate the trustworthiness of this statement. That's lacking as well, pointing to the fact that the ammunition was found in his girlfriend's room, which what the jury saw and what is in the record is that his girlfriend was in possible legal jeopardy. That in itself, that actually is indicative of the untrustworthiness of this statement. And with that, I thank you very much for your time. Thank you, counsel. The case will be submitted. Counselor excused, and we will be in recess.